HOBSON, Judge.
Appellant appeals a final order dismissing his petition to modify a final judgment of dissolution of marriage and to set aside the separation and property settlement agreement incorporated in the final judgment. We reverse.
The separation and property settlement agreement provides, in pertinent part, that:
1) The husband shall pay as alimony one-half of his gross annual income, payments to continue until the death of the wife or of the husband, whichever comes first. The wife’s remarriage does not terminate this obligation;
2) The husband shall pay $700 per month until a certain mortgage is satisfied;
3) The husband shall pay $250 per month support for each of the parties’ minor children;
4) The husband shall convey to the wife his interest in a home in North Carolina and a home in Pasco County, Florida;
5) The husband shall convey to the wife title to a 1978 Oldsmobile automobile;
6) The husband shall maintain at his expense a $52,000 life insurance policy for the remainder of his life without any change in beneficiary;
7) The wife relinquishes any claim to certain parcels of property in Virginia and Georgia.
Six months after the final judgment of dissolution was rendered, the husband filed his petition to modify the final judgment and to set aside the separation and property settlement agreement, alleging that at the time the agreement was executed he was in an extremely depressed and emotionally disturbed state and “unable to utilize the reasoning, understanding and logic which ordinarily would be used by a person of *137 ordinary prudence when dealing with property matters.” The petition further alleged that the wife used the parties’ minor children in such a manner as to “threaten the husband and coerce him into executing the agreement” and that the wife’s conduct constituted overreaching and undue influence on the husband. Moreover, the husband’s obligation to pay the wife one-half of his gross income during her lifetime whether she remarries or not is grossly and outrageously unconscionable and oppressive. ■
The wife filed a motion to dismiss, contending that the husband’s petition failed to allege any defect in the final judgment or in securing the final judgment or any other grounds under Florida Rule of Civil Procedure 1.540(b) which would entitle him to relief under that rule.
After a hearing on the motion, the trial court entered its order granting the wife’s motion to dismiss, which stated:
. . . ROBERT GARDNER ELLIS, is a physician, a person of no less than average intelligence and above average education, who is 54 years old and further was represented by Jay Altman who filed a Response in his behalf and appeared at a temporary relief hearing in his behalf and was represented by Craig Villanti who appeared at the final hearing and it is therefore
ORDERED AND ADJUDGED that the Motion to Dismiss is granted and the Respondent, ROBERT GARDNER ELLIS, shall have twenty (20) days to file an amended petition.
Although the final order appears to grant general leave to amend, the record indicates that the court orally limited its leave to amend solely to matters of future alimony. The portion of the petition relating to the property settlement agreement was, as the judge remarked, “locked in.”
The basic question in this case appears to be whether the petition is sufficient on its face to warrant an evidentiary hearing on the issues. Although the motion to dismiss stated only that the husband’s petition failed to state grounds for relief, and the final order granted the dismissal, there appear both in the transcript of the hearing and in the final order, certain comments which support our opinion that the trial judge based his decision in part on the merits of the allegations which properly should have been brought out and examined by both parties at a full evidentiary hearing. For example, the following portions of the hearing transcript are instructive:
THE COURT: You know, I am going on what is in this file here. And the file tells me that we’ve got a physician—
MR. TYNER: Yes, sir.
THE COURT: —and so physicians are educated people. I don’t know if they are intelligent people, but they are educated people. And the file also tells me that he had a lawyer. Altman filed an answer on October the 24th.
* * Hs * * *
THE COURT: ... Was Altman at the final hearing?
MR. BRAY: No, sir. Mr. Villanti came to the final hearing, but did not really do anything in the way of helping the doctor. The doctor had already told them, as I understand it, at that time that he didn’t want anything done at the final hearing.
THE COURT: Why did Villanti come?
MR. BRAY: Altman asked him to come over.
MR. TYNER: Altman could not be there that day.
* * * * * *
MR. TYNER: Your Honor, it would appear at this point we are getting into the merits of the case or lack of merits of what happened as opposed to the motion to dismiss, a hearing on the motion to dismiss.
******
THE COURT: ... Mr. Tyner, I am going to grant the motion to dismiss, and I see you want a record here,—
MR. TYNER: Yes, sir.
THE COURT: —so I will tell you that I find from an examination of the Court file that the respondent, Dr.—
*138 MR. TYNER: Ellis.
THE COURT: —Ellis is a physician, therefore, a person of not less than average intelligence, and certainly I would think above average intelligence and certainly above average in education.
How old is he?
MR. TYNER: Fifty-four, I believe.
THE COURT: He is no babe in the woods then.
MR. TYNER: No, sir. He has been out of medical school for a while.
THE COURT: Okay. And further that he was represented by counsel, Mr. Altman, Jr.?
MR. BRAY: Yes, sir.
THE COURT: Because the record says that on October 24th, Mr. Altman filed an answer in response to the petition for dissolution, and that the agreement between the parties, which is the subject of this action today, was executed on November 6th, 1978, some two weeks after Altman had filed the answer; so I assume that Altman was, you know, still his attorney at that time.
* * * * * *
MR. TYNER: ... He did have an attorney initially. He did not prior to the entry of the final judgment.
♦ s{: sfc * * sjt
THE COURT: —all that I have in front of me. The record says that an attorney filed an answer, and that an attorney appeared at the final hearing, therefore I can only assume that between those two periods of time he had legal representation.
* * * * * *
THE COURT: I think it was Holmes, wasn’t it, who said there was no law against entering into a dumb contract?
* * * * * *
THE COURT: You see how dumb this is?
MR. TYNER: Absolutely.
THE COURT: I know you do, and I think you do, too. When you are talking about gross income, a practitioner, and we all know, you know; every year I know I used to figure my overhead percent, you know, and if it got about 33 percent to run that office, I was not happy. I’d like it down about 20, of course, but could never get there either. But under this provision of gross income, he can get to a point where his expense can be say 52 percent, and so he’s got to give her all the rest, and he ends up with zilch.
MR. BRAY: Judge,—
THE COURT: That is dumb. .1 don’t know if it is unconscionable; it is dumb.
* * * * * *
THE COURT: Well, what do you think of this? I think there is a little bit of right on both sides; I mean as far as modifying it is concerned.
The allegations of the petition were sufficient to require an evidentiary hearing on the issues. It was error for the trial judge to set forth findings of fact which could not be fully explained from the pleadings. Accordingly, we reverse the final order of dismissal and remand this cause to the trial court for an evidentiary hearing concerning matters raised in the petition.
REVERSED and REMANDED.
GRIMES, C. J., and DANAHY, J., concur.